IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROXANNE D. ANDERSON,<br>    Plaintiff, | :<br>:<br>: |
| v. | :   CIVIL ACTION NO. 25-CV-5502 |
| FIRST PREMIER BANK, *et al.*,<br>    Defendants. | :<br>:<br>: |

<u>MEMORANDUM</u>

**WEILHEIMER, J.**                                                                                                           NOVEMBER 17, 2025

      Plaintiff Roxanne D. Anderson commenced this civil action by filing a *pro se* Complaint, naming as Defendants First Premier Bank, American Heritage FCU, Credit Union of New Jersey, Experian, TransUnion, and Equifax Information Services LLC, and asserting various claims under the Fair Credit Reporting Act ("FCRA") and Americans with Disabilities Act ("ADA"). (*See* ECF No. 1.) Anderson has also filed a Motion for Leave to Proceed *In Forma Pauperis*. (*See* ECF No. 2.) For the following reasons, the Court will grant Anderson leave to proceed *in forma pauperis* and dismiss her Complaint without prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915.

**I.**     **FACTUAL ALLEGATIONS**[1]

      Anderson states that she is a "retired State of New Jersey government employee," and she now operates her own consulting firm. (Compl. at 3.) She asserts that she "suffered a

---

[1] The facts set forth in this Memorandum are taken from Anderson's Complaint (ECF No. 1). The Court adopts the pagination assigned to the Complaint by the CM/ECF docketing system. Anderson included sensitive personal documents with her Complaint, so the Clerk of Court will be directed to mark the Complaint and its attachments as case-participant-view only. **Anderson is reminded that documents filed in this case are public, not private**, and they are subject to the Federal Rules of Civil Procedure and Local Rules of this Court. In any future submissions, Anderson must redact or partially modify "[p]ersonal identifiers such as Social Security numbers, dates of birth, [and] financial account numbers." E.D. Pa. L. R. Civ. P. 5.1.3.

concussion that impaired her cognitive function, including her sense of time and space," although it is not clear from her pleading when that injury occurred. (*Id.* at 2.) She further states that she "is a survivor of domestic violence and has been involved in multiple auto accidents," the most recent of which occurred on February 5, 2025, and March 25, 2025, and that she "has been hospitalized seven times in . . . a six month period and during the span of both auto accidents." (*Id.* at 3-4.)

Anderson makes various and repetitive allegations related to the reporting of her credit by the named Defendants. Anderson states that on October 12, 2023, she missed payments on two credit card accounts she held with First Premier Bank due to the "medical emergency" of her concussion, which may have occurred on the same date. (*Id.* at 2.) She states that she "discovered the oversight in December 2023," when she applied for a business loan and was denied. (*Id.*) She alleges that First Premier Bank "reported both accounts as 30 days late, causing [Anderson]'s credit score to drop 40-60 points per account[,] render[ing] her ineligible for business credit." (*Id.*) She states that at some unspecified time she "submitted a Goodwill and Hardship letter with medical documentation, referencing her protection under the ADA. First Premier Bank refused to remove the late remarks, despite having legal discretion to do so under the FCRA." (*Id.*) She claims to have "disputed both accounts monthly since December 2023 and filed formal complaints" with both the Consumer Financial Protection Bureau ("CFPB") and the Federal Reserve Consumer Help Center. (*Id.*) She states that "no corrective action has been taken." (*Id.*)

Anderson asserts that Defendant American Heritage FCU "damaged her credit from June 2023 to the present for failing to remove negative marks from [her] credit report," and that American Heritage told her that it would "remove [her] last 30-day late payment" after she

2

"submit[ed] a hardship letter with supporting evidence," but American Heritage never followed up and the promised "deletion" never occurred. (*Id.* at 4.) She further alleges that American Heritage "took out a second insurance policy on [Anderson's] 2015 Lexus when [she] already had insurance," and "threaten[ed] to repossess [her] car for missing an October 2023 payment" that she purports to have made on time. (*Id.* at 6.) Anderson "was informed by an American Heritage representative that since [Anderson] was 5 days late making her auto payment in June 2023, [American Heritage] will not remove the 30-day late [sic] in December 2024." (*Id.* at 7.) Anderson asserts that American Heritage "refuses to correct the record[, r]egardless of the evidence presented that the December 2024 payment was made on time." (*Id.*)

Anderson alleges that the Credit Union of New Jersey "has been reporting [her] to the incorrect credit reporting agency for several years." (*Id.* at 4.) She asserts that at some unspecified point she "filed a formal complaint with the CFPB regarding two negative credit remarks reported by Equifax concerning accounts held with the Credit Union of New Jersey." (*Id.* at 2.) "In response to the CFPB complaint, the Credit Union of New Jersey issued a letter confirming that both accounts should be reporting positively, acknowledging that the negative remarks were incorrect . . . [and] finally removed the negative remark and the account completely from [Anderson's] Experian Credit report." (*Id.*) Anderson appears to assert that the Credit Union of New Jersey "does not subscribe" to Experian, so this information "should not have been reported on [her] Experian credit report ever," and that, despite the correction to her Experian report, her "Equifax Credit report continues to reflect a negative remark." (*Id.*)

Anderson further asserts that Defendant TransUnion "has not removed [Anderson's] two 30-day late remarks from her First Premier and American Heritage accounts in spite of received documents," and that she has been "disputing the accounts since December of 2023 with no

3

resol[ution]." (*Id.* at 5.) She states that she is "protected under" the ADA and the FCRA. (*Id.*) She asserts that she "is unable to fund her business because of these biased credit reporting agencies who are motivated to keep credit reports in negative status for profit." (*Id.*) Anderson seeks money damages of $2.5 million in damages and injunctive relief to "correct the disputed credit entries." (*Id.* at 10.)

## II.   STANDARD OF REVIEW

The Court will grant Anderson's motion for leave to proceed *in forma pauperis*. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim to relief, an inquiry governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). At the screening stage, the Court will accept the facts alleged in the *pro se* Complaint as true, draw all reasonable inferences in Anderson's favor, and "ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (cleaned up), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

As Anderson is proceeding *pro se*, the Court construes her allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F.3d at 245). An unrepresented litigant "cannot flout procedural rules - they must abide by the same rules that apply to all other litigants." *Id.*

4

In that regard, a complaint may be dismissed for failing to comply with Federal Rule of Civil Procedure 8. *Garrett v. Wexford Health*, 938 F.3d 69, 91 (3d Cir. 2019). Rule 8 requires a pleading to include a "short and plain statement showing that the pleader is entitled to relief," as well as a statement of the court's jurisdiction and a demand for the relief sought. Fed. R. Civ. P. 8(a). In determining whether a pleading meets Rule 8's "plain" statement requirement, the Court should "ask whether, liberally construed, a pleading 'identifies discrete defendants and the actions taken by [the named] defendants' in regard to the plaintiff's claims." *Garrett*, 938 F.3d at 93 (citation omitted). "Naturally, a pleading that is so vague or ambiguous that a defendant cannot reasonably be expected to respond to it will not satisfy Rule 8." *Id.* (internal quotations omitted). The important consideration for the Court is whether, "a pro se complaint's language . . . presents cognizable legal claims to which a defendant can respond on the merits." *Id.* at 94.

## III.  DISCUSSION

### A.  ADA

Anderson states that she is "protected under" the ADA and appears to assert that her interactions with the various Defendants should have taken her disability into account in some way. Title III of the ADA prohibits places of public accommodation from discriminating against individuals with disabilities in connection with goods, services, facilities, privileges, advantages or accommodations. 42 U.S.C. § 12182(a). To state a claim under Title III of the ADA, a plaintiff must plausibly allege that: (1) she has a disability; (2) the defendant is a public accommodation within the meaning of the statue; and (3) she was denied goods, services, facilities, privileges, advantages or accommodations due to discrimination based on her disability, which can include failure to reasonably accommodate her disability. *See Matheis v.*

*CSL Plasma, Inc.*, 936 F.3d 171, 175 (3d Cir. 2019); *Douris v. Dougherty*, 192 F. Supp. 2d 358, 368 (E.D. Pa. 2002).

A plaintiff is disabled for purposes of the ADA if she (1) has a "physical or mental impairment that substantially limits one or more" of her "major life activities"; (2) has "a record of such an impairment"; or (3) is "regarded as having such an impairment." *Eshleman v. Patrick Indus., Inc.*, 961 F.3d 242, 245 (3d Cir. 2020) (citing 42 U.S.C. § 12102(1)). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). Public accommodations include, for example, grocery stores, banks, shopping centers or other service establishments that affect commerce. *See* 42 U.S.C. § 12181(7)(E)-(F). Only injunctive relief is available to a private plaintiff suing under Title III of the ADA; money damages are not available. 42 U.S.C. § 12188(a); *Bowers v. NCAA*, 346 F.3d 402, 433 (3d Cir. 2003) ("Title III defendants cannot be liable for money damages." ); *see also Abadi v. Target Corp.*, No. 23-1050, 2023 WL 4045373, at *2 (3d Cir. June 16, 2023) ("Title III of the ADA, which prohibits discrimination on the basis of disability in public accommodations, only provides for injunctive relief." (citation omitted)).

Many of Anderson's allegations center on her purported disability, but she never clearly states, for example: (a) when exactly her concussion occurred; (b) how it affected her such that it constitutes a "disability" within the meaning of the ADA, or how it otherwise affected her relationship to the Defendants, besides the non-specific assertion that the concussion "impaired her cognitive function, including her sense of time and space" (Compl. at 2); or (c) whether and how she asked the Defendants to accommodate her disability. Even if she had done so, however,

6

her ADA claim would still not be plausible. Title III of the ADA directs public accommodations such as banks to make "reasonable modifications in policies, practices, or procedures," when necessary to provide the same goods and services to individuals with disabilities as individuals without disabilities. 42 U.S.C. § 12182(b)(2)(A)(ii). In addition to Title III, under various provisions of federal consumer-protection law, financial institutions "may not treat disabled persons *less* favorably than non-disabled persons." *Jordan v. Chase Manhattan Bank*, 91 F. Supp. 3d 491, 507 (S.D.N.Y. 2015) (citing 42 U.S.C. § 3605; 15 U.S.C. § 1691). "But no provision of federal law requires financial institutions or other entities to treat disabled persons *more* favorably than non-disabled persons, so as, for example, to treat loan-repayment deadlines as non-binding when the borrower is disabled." *Id.*; *cf. Blair v. Bank of Am., N.A.*, No. 10-946, 2012 WL 860411, at *5 (D. Or. Mar. 13, 2012) ("[Title III] does not require the provision of different services to people with disabilities, only . . . 'nondiscriminatory enjoyment of those that are provided. There is no discrimination under the Act where disabled individuals are given the same opportunity as everyone else.'" (quoting *Arizona ex rel. Goddard v. Harkins Amusement Enter., Inc.*, 603 F.3d 666, 671 (9th Cir.2010))), *aff'd* 573 F. App'x 665 (9th Cir. 2014) (not precedential).

To the extent that Anderson seeks relief under the ADA, she cannot state a plausible claim related to her loan payments or credit history. Because the ADA cannot provide Anderson with the "accommodation" that she apparently seeks—that is, forgiveness of late payments or a withholding or modification of negative credit information about late payments solely on the basis of a disability—the Court concludes that amendment of these claims would be futile, and they will be dismissed with prejudice. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *cf. Jones*, 91 F. Supp. 3d at 507 ("[T]he approach [plaintiff] appears to advocate,

7

under which a financial institution could not enforce its policies with respect to recovering collateral from defaulting borrowers when the borrower is disabled, would potentially *violate* the ADA, which makes it 'discriminatory to provide an individual . . . , on the basis of a disability . . . with a good, service, facility, *privilege, advantage, or accommodation* that is different or separate from that provided to other individuals, unless such action is necessary to provide the individual or class of individuals with a good, service, facility, privilege, advantage, or accommodation, or other opportunity that is *as effective as* that provided to others.'" (quoting 42 U.S.C. § 12182(b)(1)(A)(iii)).

### B. FCRA

Anderson also cites to the FCRA, which was enacted "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007); *see also SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 357 (3d Cir. 2011) (noting that the FCRA is intended "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant and current information in a confidential and responsible manner" (quoting *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010))). In the language of the FCRA, credit reporting agencies "collect consumer credit data from 'furnishers,' such as banks and other lenders, and organize that material into individualized credit reports, which are used by commercial entities to assess a particular consumer's creditworthiness." *Seamans v. Temple Univ.*, 744 F.3d 853, 860 (3d Cir. 2014).

"[U]nder the FCRA, 15 U.S.C. § 1681s-2(b) is the only section that can be enforced by a private citizen seeking to recover damages caused by a furnisher of information." *Eades v. Wetzel*, 841 F. App'x 489, 490 (3d Cir. 2021) (*per curiam*) (internal quotations omitted). To

8

state a plausible claim under that provision of the FCRA against a furnisher of credit information, such as a bank, Anderson must allege that she "filed a notice of dispute with a consumer reporting agency; the consumer reporting agency notified the furnisher of information of the dispute; and the furnisher of information failed to investigate and modify the inaccurate information." *Harris v. Pennsylvania Higher Educ. Assistance Agency/Am. Educ. Servs.*, No. 16-693, 2016 WL 3473347, at *6 (E.D. Pa. June 24, 2016), *aff'd sub nom. Harris v. Pennsylvania Higher Educ. Assistance Agency/Am. Educ. Servs.*, 696 F. App'x 87 (3d Cir. 2017); *see also* 15 U.S.C. § 1681s-2(b). "[T]here must be some threshold showing of inaccuracy to make a claim against a furnisher." *Holland v. Trans Union LLC*, 574 F. Supp. 3d 292, 302 (E.D. Pa. 2021).

The FCRA also requires consumer reporting agencies "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). To state a claim under § 1681e(b), a plaintiff must plead the following elements: (1) inaccurate information was included in a credit report; (2) the inaccuracy was due to the consumer reporting agency's failure to follow reasonable procedures to assure maximum possible accuracy; (3) the consumer suffered an injury; and (4) that injury was caused by the inclusion of the inaccurate entry. *Cortez*, 617 F.3d at 708 (citing *Philbin v. Trans Union Corp.*, 101 F.3d 957, 963 (3d Cir. 1996)).[2]

---

[2] The Court notes that Anderson appears to seek "compensatory damages" of $2.5 million based on her FCRA claims. (*See* Compl. at 9-10.) The FCRA provides for civil liability for noncompliance due to willfulness and negligence. *See* 15 U.S.C. § 1681n (creating civil liability for willful noncompliance with any portion of the Act); *id.* § 1681o (creating civil liability for negligent noncompliance with any portion of the Act). A willful violation of the FCRA requires the additional showing that the defendant acted knowingly or with reckless disregard of the statute's terms. *Seamans*, 744 F.3d at 868 (3d Cir. 2014). If she chooses to file an amended complaint as outlined in this Memorandum, Anderson should be aware that relief for a negligent

9

The FCRA also "confers on a consumer a right to have the negative information on his or her credit report investigated for accuracy." *Klotz v. Trans Union, LLC*, 246 F.R.D. 208, 211 (E.D. Pa. 2007). In that regard, if a consumer disputes the completeness or accuracy of information contained in a file, the consumer reporting agency must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate." 15 U.S.C.A. § 1681i(a)(1)(A). To establish that a consumer reporting agency is liable for failing to reinvestigate a dispute under the FCRA, the consumer must establish that the consumer reporting agency had a duty to do so, and that it would have discovered a discrepancy had it undertaken a reasonable investigation. *Cortez*, 617 F.3d at 713 (citing *Cushman v. Trans Union Corp.*, 115 F.3d 220, 226 (3d Cir. 1997)).

Accordingly, to proceed under either § 1681e(b) or § 1681i(a), a plaintiff must show that the reported information was in fact inaccurate. *Bibbs v. Trans Union LLC*, 43 F.3d 331, 339 (3d Cir. 2022); *see also Angino v. Trans Union LLC*, 784 F. App'x 67, 69 (3d Cir. 2019) ("To prevail under [a § 1681e(b) claim or a § 1681i(a) claim], the . . . [plaintiffs] must show that their credit report contains inaccurate information."); *Covington v. Equifax Info. Servs., Inc.*, No. 18-15640, 2019 WL 4254375, at *4 (D.N.J. Sept. 9, 2019) ("As with § 1681e(b) claims, '[a] claim under 1681i will . . . fail if the consumer cannot show that the information in his or her file was inaccurate.'") (citations omitted, alterations in original). "[I]nformation that is technically accurate but materially misleading is sufficient to trigger § 1681i(a), just as it is for § 1681e(b)." *Bibbs*, 42 F.3d at 339 (citing *Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 756 (9th Cir. 2018)). Additionally, the agency "may terminate a reinvestigation of information disputed by a

---

violation of the FCRA is limited to actual damages, and that statutory or punitive damages are only available in cases of willful violations. *See* §§ 1681n(a), 1681o(a).

consumer . . . if the agency reasonably determines that the dispute by the consumer is frivolous or irrelevant, including by reason of a failure by a consumer to provide sufficient information to investigate the disputed information." 15 U.S.C. § 1681i(a)(3)(A).

Additionally, a plaintiff must plead facts in support of her standing to bring a claim under any provision of the FCRA. Article III of the Constitution limits the power of the federal judiciary to the resolution of cases and controversies, and this "requirement is satisfied only where a plaintiff has standing." *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 273 (2008). To establish Article III standing to bring her FCRA claims, Anderson "bears the burden of establishing: '(1) an injury-in-fact; (2) that is fairly traceable to the defendant's challenged conduct; and (3) that is likely to be redressed by a favorable judicial decision.'" *Kelly v. RealPage Inc.*, 47 F.4th 202, 211 (3d Cir. 2022) (quoting *St. Pierre v. Retrieval-Masters Creditors Bureau, Inc.*, 898 F.3d 351, 356 (3d Cir. 2018)). An injury-in-fact must be "concrete— that is, real, and not abstract." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021) (citation and internal quotations omitted). Anderson must plead facts that tie a defendant's conduct to a concrete harm; allegations of a bare violation of the statute are not sufficient to plead standing. *See id.* at 434 ("The mere presence of an inaccuracy in an internal credit file, if it is not disclosed to a third party, causes no concrete harm."). A diminished credit score, denial of credit, and "wasted time and expense" can be concrete injuries, but they must be traceable to the conduct of a defendant to establish standing. *See generally Norman v. Trans Union, LLC*, 669 F.Supp.3d 351, 372-75 (E.D. Pa. 2023) (discussing theories of injury and traceability), *appeal dismissed*, No. 23-8021, 2024 WL 1793554 (3d Cir. Jan. 10, 2024).

Anderson does not plead clear facts in her Complaint to support a claim that any of the named Defendants violated the FCRA. At some points she appears to concede that some of her

11

negative credit remarks were technically accurate—for example, that she made late payments on her First Premier Bank credit card account (Compl. at 2)—but asserts that they should have been excused or deleted based on her disability. At other points she appears to dispute the accuracy of other negative credit remarks entirely, yet the order in which she communicated her disputes to the various Defendants and the extent of the investigations into her disputes are not clear. Moreover, as discussed below, she appears to be attempting to join unrelated claims against unrelated Defendants and doing so without any clear factual narrative providing relevant dates or discrete actions to address the elements described above.

### C. Rule 8 and Misjoinder

Anderson's Complaint also fundamentally fails to comply with Rule 8 because it is disjointed and repetitive, lacks a clear factual narrative, and repeats numerous headings and boilerplate text throughout. She also attempts to joins unrelated Defendants and unrelated claims. Anderson asserts that three different financial institutions wronged her in three separate ways that are related only in that they all allegedly harmed her credit score. She also names the three major credit-reporting agencies as Defendants but provides few facts about her interactions with those agencies related to her credit disputes. Where she does provide dates, there are inconsistent references to months and years, or the dates relate to her injuries sustained in car accidents that happened after her credit disputes began and appear to be unrelated. Her Complaint is best described as a "kitchen sink" or "shotgun" complaint because it essentially seeks to bring "every conceivable claim against every conceivable defendant." *Talley v. Harper*, No. 14-1411, 2017 WL 413069, at *2 (W.D. Pa. Jan. 31, 2017). Courts have "repeatedly criticized" this type of pleading as "troublesome for many reasons." *Id.*

> For one thing, complaints like [that] . . . unfairly burden defendants and courts. The plaintiff who files such a shotgun complaint shifts onto the defendant and the court the

12

> burden of identifying the plaintiff's genuine claims and determining which of those claims might have legal support. This is not the job of either a defendant or the Court. It is the plaintiff's burden under Rule 8 to reasonably investigate his claims, to research the relevant law, to plead only viable claims, and to plead those claims concisely and clearly, so that a defendant can readily respond to them and a court can readily resolve them.
>
> It is important to note that a "kitchen-sink" or "shotgun" complaint also harms the plaintiff who brings it. In most cases, a genuine dispute that supports a viable legal claim underlies a plaintiff's complaint. But this genuine dispute becomes almost impossible to discern when it is buried in pages of various allegations. . . .

*Id.* Her Complaint therefore must be dismissed because she has not "present[ed] cognizable legal claims to which a defendant can respond on the merits," *Garrett*, 938 F.3d at 94, but she will be afforded a chance to file an amended complaint. However, Anderson's leave to amend in this action is not unlimited, and she should be mindful of the rules for joining claims and parties in a case when filing any amended complaint.

Federal Rule of Civil Procedure 18(a) states that "[a] party asserting a claim, . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Federal Rule of Civil Procedure 20 allows a plaintiff to join multiple defendants in one action if: (a) "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences"; and (b) "any question of law or fact common to all defendants will arise in the action." "[J]oinder of claims, parties and remedies is strongly encouraged.'" *Hagan v. Rogers*, 570 F.3d 146, 153 (3d Cir. 2009) (*quoting United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966)). "But this . . . is not a license to join unrelated claims and defendants in one lawsuit." *McKinney v. Prosecutor's Off.*, No. 13-2553, 2014 WL 2574414, at *14 (D.N.J. June 4, 2014) (internal quotations omitted). "Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

Anderson may file an amended complaint in this action that complies with these rules for joinder. She can sue the same lender over multiple inaccuracies, but if she intends to sue different lenders over different inaccuracies, she cannot combine them into a single case. She can also name a lender and a consumer reporting agency as defendants in a single case only if her claims against each of those parties relate to the same inaccuracy. If she wishes to sue different parties over different inaccuracies, she must file separate cases. Failure to comply with the joinder rules may result in dismissal or severance of her claims into separate cases. *See Graudins v. Retro Fitness, LLC*, 921 F. Supp. 2d 456, 467 (E.D. Pa. 2013) (noting that Fed. R. Civ. P. 21 gives district courts "broad discretion in deciding whether to sever a case by way of severing parties or claims"; that courts consider "convenience of the parties, avoiding prejudice, and promoting expedition and economy"; and that severance "essentially creates a separate case" (cleaned up)); *see also U.S. ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc.*, 149 F.3d 227, 231 (3d Cir. 1998) ("A severed claim proceeds as a discrete suit.").

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Anderson leave to proceed in forma pauperis and dismiss her Complaint for failure to state a claim pursuant to 28 U.S.C. § 1915. Any claims under the ADA will be dismissed with prejudice, and any claims under the FCRA will be dismissed without prejudice. Anderson may file an amended complaint to provide more facts related to her FCRA claims and to comply with the rules for joinder of claims and parties. An appropriate Order follows, which provides further information about amendment.

BY THE COURT:

_____
GAIL A. WEILHEIMER, J.